UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------X
OSCAR RIOS,

      Petitioner,        MEMORANDUM & ORDER
                    07-CV-330 (NGG)
  - against -

SUPERINTENDENT ARTUZ,
Clinton Correctional Facility,

      Respondent.
---------------------------------------------X
GARAUFIS, United States District Judge.

*Pro se* petitioner Oscar Rios ("Rios" or "Petitioner") brings this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is currently incarcerated in Clinton Correctional Facility in Dannemora, New York. Rios was convicted in New York Supreme Court, Queens County of attempted murder in the second degree, assault in the first degree, attempted assault in the first degree, two counts of reckless endangerment in the first degree, criminal possession of a weapon in the fourth degree, and criminal mischief in the fourth degree.

Rios contests his incarceration on four grounds, arguing that (1) by refusing to admit certain medical records into evidence, the court denied Petitioner his fundamental right to present a defense, (2) Petitioner's trial counsel provided constitutionally deficient representation by failing to file the aforementioned medical records within the statutory time frame, New York Criminal Procedure Law ("N.Y. C.P.L.") § 250.10, (3) testimony of a "prior bad act" was admitted in violation of New York State precedent, People v. Molineux, 61 N.E. 286 (N.Y. 1901), and (4) Petitioner was not competent to waive his right to be present at sidebar

conferences during *voir dire*, a right he therefore waived in violation of his right to be present at all stages of the trial. For the reasons set forth below, these arguments fail to persuade this court, and thus Rios's petition is DENIED.

## I. BACKGROUND

### A. Factual Background

#### 1. Prior to the Incident

Rios was born and raised in El Salvador, where he worked on a farm with his machete (a fact relevant to the subsequent discussion) and served in the military. Upon moving to the United States in 1981, Petitioner held several steady jobs and had no criminal convictions prior to those described in this Memorandum and Order. While living in the United States, Petitioner purchased three taxis, which he owned and operated in the period relevant to this petition.

In mid-April 2001, Carmen Velez broke off a four-year relationship with Petitioner. Distraught by her sudden decision to end their relationship, Petitioner became suicidal, for which he was briefly hospitalized. On May 13, 2001, Petitioner went to his and Velez's apartment to retrieve his machete. Velez claims that, once in their apartment, Petitioner waived around his machete and threatened to kill himself. After this incident, Velez went to live with her sister, refused Petitioner's repeated telephone calls, and would not meet with him when he showed up at her sister's apartment to give her money.

#### 2. The Incident

On May 15, 2001, when Velez arrived at her place of employment in Queens, New York, in a car driven by her friend, Claudio Rodriguez, at approximately 9:00 a.m., she spotted Petitioner in one of his taxis, parked nearby, and told Rodriguez to keep driving. Petitioner

followed them and bumped into the rear of Rodriguez's car, causing Rodriguez to lose control and hit several parked cars. Velez exited the car and ran.

There is some dispute as to what happened next. Velez and Rodriguez claim that Petitioner ran toward Velez, who fell, and hovered over her with his machete in hand, only to be quickly attacked by Rodriguez, who then sustained several cuts from the machete. According to this account, Velez escaped, Rodriguez fell to the ground with his hands on Petitioner's machete, and the two struggled to gain sole possession of the machete until bystanders intervened, forcing the machete out of both of their hands. This testimony is partially validated by an independent witness who was on the street that day and claims to have physically intervened in the struggle between Rodriguez and Petitioner.

Petitioner, however, claims that after his and Rodriguez's cars came to a halt, Velez ran away and Rodriguez, after rummaging through his glove compartment, approached Petitioner's car in a threatening manner. Petitioner claims he then took his machete, which he claims he always kept in his taxi, and attempted to run away. After Rodriguez caught up to him, Petitioner claims the two struggled and Rodriguez slipped and fell, cutting his chin and hands on the machete. Petitioner claims there was ample opportunity as he stood over Rodriguez, if he so desired, to further injure or kill Rodriguez, but that he did not wish to harm him. According to the Petitioner's account, after bystanders intervened, Petitioner dropped the machete and ran off. Petitioner claims that he never came in contact with Velez during this incident.

It is undisputed that as a result of the incident, Rodriguez suffered a permanent scar on his chin and lost mobility in several of his fingers, though Velez was unharmed.

### 3. After the Incident

Petitioner eluded police officers for six months after this incident. He claims he spent that time in Washington, D.C. with relatives in order to recover mentally from what had transpired and from the previous suicidal intentions he had been harboring. Eventually, Petitioner voluntarily turned himself in to the police after, he claims, he recovered from his "craziness."

## B. *Procedural History*

### 1. Trial

Following a jury trial, Petitioner was convicted of Attempted Murder in the Second Degree, N.Y. Penal Law § 110.00; Assault in the First Degree, N.Y. Penal Law § 120.10(1); Attempted Assault in the First Degree, N.Y. Penal Law § 110.00; two counts of Reckless Endangerment in the First Degree, N.Y. Penal Law § 120.25; Criminal Possession of a Weapon in the Fourth Degree, N.Y. Penal Law § 265.01(2); and Criminal Mischief in the Fourth Degree, N.Y. Penal Law § 145.00(1). Petitioner was sentenced to consecutive determinate terms of incarceration of ten years for attempted murder and five years for first-degree assault. The court also imposed concurrent determinate terms of incarceration of five years for attempted assault, one year for weapon possession, and one year for criminal mischief, and a concurrent indeterminate term of incarceration of two to six years for each of the two reckless endangerment convictions.

### 2. Direct Appeal

Petitioner, through counsel, appealed his conviction to the Appellate Division, Second Department, in July 2004. He argued that the People's evidence did not prove beyond a

reasonable doubt that he intended to kill or cause serious physical injury to Velez and that the jury's verdict with respect to those two counts of the indictment was not supported by the weight of the evidence. He also argued that the sentence was excessive and should be reduced in the interest of justice.

The Appellate Division accepted a *pro se* supplemental brief[1], dated May 20, 2005, in which Petitioner argued that (1) the trial court erred by failing to order a competency hearing, (2) trial counsel improperly waived Petitioner's right to a speedy trial, (3) Petitioner's arrest was unlawful, (4) trial counsel provided ineffective assistance because he failed to request a competency hearing, (5) the trial was rendered unfair by a comment in the prosecutor's summation and an instruction by the trial court concerning Petitioner's competence, and (6) the sentence was harsh and excessive.

The Appellate Division held that the evidence, viewed in the light most favorable to the prosecution[2] was legally sufficient to establish Petitioner's guilt beyond a reasonable doubt and, in exercising their factual review power, found that the verdict of guilty was not against the weight of the evidence. People v. Rios, 809 N.Y.S.2d 463 (App. Div. 2d Dep't 2006). Concerning Petitioner's *pro se* claims, the Appellate Division found meritless the contention that the trial court should have, *sua sponte*, ordered a second competency examination or ordered a competency hearing. Id. It also found that the sentence was not excessive. Id. It held the remaining contentions, including those in the *pro se* brief, to be "unpreserved for appellate

---

[1] It is unclear to this court why Rios submitted a *pro se* brief after filing an appeal through counsel.

[2] Jackson v. Virginia, 443 U.S. 307, 319 (1979); People v. Contes, 454 N.E.2d 932 (N.Y. 1983).

5

review (see C.P.L. 470.05[2]) and, in any event, [] without merit." Id. Petitioner's application for leave to appeal to the New York Court of Appeals was denied on April 26, 2006. People v. Rios, 849 N.E.2d 981 (N.Y. 2006).

*3. Motion to Vacate*

On February 7, 2005, Petitioner filed a *pro se* motion to vacate his judgment of conviction pursuant to N.Y. C.P.L. § 440.10. Petitioner claimed that (1) he had been deprived of a fair trial due to the trial court's (a) failure to hold a hearing to determine whether he was competent to stand trial and (b) alleged preclusion of an insanity defense and (2) he received ineffective assistance of counsel due to the failure of his trial attorney to (a) request a competency hearing, (b) adequately investigate Petitioner's mental competence, (c) call certain witnesses, (d) obtain certain "secret documents," and (e) file a motion to set aside the verdict. Petitioner alleged further that he had been deprived of his right to a speedy trial. In a decision dated July 1, 2005, the trial court denied Petitioner's motion. Petitioner's application for permission to appeal that decision was denied by the Appellate Division on December 5, 2005.

*4. Writ of Error Coram Nobis*

On April 3, 2006, Petitioner filed a petition for a writ of error *coram nobis* in the Appellate Division. He argued that he had been denied effective assistance of appellate counsel because counsel failed to argue (1) that the trial court improperly precluded Petitioner's insanity defense, (2) that Petitioner's trial counsel was ineffective for neglecting to serve timely notice of an insanity defense, (3) that the trial court erred in admitting certain evidence of prior bad acts, and (4) that Petitioner was deprived of his right to be present at all material stages of the trial. By Decision and Order dated June 20, 2006, the Appellate Division denied this application. People

v. Rios, 816 N.Y.S.2d 377 (App. Div. 2d Dep't. 2006). Petitioner did not seek leave to appeal this decision to the New York Court of Appeals.

On January 16, 2007, Petitioner filed a *pro se* petition for a writ of *habeas corpus*. Because his application for appeal to the New York Court of Appeals was denied on April 26, 2006, his *habeas corpus* petition was timely. 28 U.S.C. § 2244(d)(1)(A) (setting forth a one-year period of limitations that runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review").

## II. DISCUSSION

### A. *Standard of Review*

The standard of review for habeas corpus petitions filed by state prisoners is set forth in 28 U.S.C. 2254(d), as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). If Rios's claims have been fully adjudicated on the merits in state court, he must show that the state court proceedings–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is contrary to clearly established federal law as determined by the Supreme Court "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state

court's decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407.

Accordingly, this court cannot grant the Petitioner's writ if it merely "concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. The Second Circuit has warned, however, that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (citations and quotation marks omitted).

## *B. Rios's Claims*

### *1. Preclusion of an Insanity Defense*

There is no evidence in the record supporting Rios's assertion that the trial court precluded him from claiming that he lacked criminal responsibility by reason of mental disease or defect. Rios's attorney investigated the possibility of claiming such a defense, but after soliciting the opinion of a psychiatrist and consulting with Rios, did not believe "based on that, that there is any legal basis for [an insanity defense] and even if there had been a legal basis for it, as an attorney I probably would have recommended to my client that he not do that." (Transcript dated January 31, 2003 ("Tr.") at 46.)

Upon making this statement, defense counsel indicated that Petitioner had "just now" stated that he wished to offer certain psychiatric records into evidence at trial. (Id. at 58-61.) While not seeking to claim a defense of insanity, Petitioner wanted evidence regarding prior

8

hospitalization admitted to buttress testimony he had planned to give regarding the hospitalization; defense counsel argued that jury members potentially would not believe Rios's statements without accompanying records. The court ruled that, to the extent that the records contained expert opinions, they were psychiatric evidence within the meaning of N.Y. C.P.L. § 250.10, and thus considering the lateness of the notice, their admission was at the judge's discretion. (Tr. at 58-61.)

Under N.Y. C.P.L. § 250.10(2), "psychiatric evidence is not admissible upon a trial unless the defendant serves . . . and files" a notice of intent to present psychiatric evidence "not more than thirty days after entry of a plea of not guilty," unless the court permits a later filing in the interest of justice and for good cause. "[A]lthough trial court's discretion is not absolute[,] exclusion of relevant and probative testimony . . . implicates defendant's constitutional right" and must therefore be weighed "against resultant prejudice to the People from belated notice." People v. Berk, 667 N.E.2d 308, 312 (N.Y. 1996). "[U]nder § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state court decision applied" the applicable law to the facts of his case incorrectly; rather a petitioner must show it was applied in an "objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002).

Rios was granted several delays in the months prior to the ruling of January 31, 2003 in order to investigate the merit of an insanity defense. Counsel showed no good cause why he did not file a notice to admit medical records days or weeks prior to this ruling. The medical records and psychiatrist's opinion were known to counsel for some time, and he had told the prosecutor as recently as two weeks prior to this ruling that Rios would not introduce psychiatric evidence at trial. (Tr. at 61.) Counsel's fear that Rios's credibility would suffer because of the lack of

9

records does not constitute a "substantial interest of justice" necessary to further burden the state. Rios was allowed to testify to his hospitalization, and if the prosecutor sought to challenge his credibility, the judge would have allowed Rios to introduce the medical records as evidence. (Tr. at 66, 67.) Otherwise, his statements concerning his hospitalization, which is the only fact to which the psychiatric records are relevant, would stand unchallenged to be weighed appropriately by the jury.

Deference should be afforded to the trial court's ruling on the merits of the claim. See 28 U.S.C. § 2254(d) ("An application for a writ of habeas corpus . . . shall not be granted . . . unless the adjudication of the claim" resulted in a decision that involved "an unreasonable determination of the facts in light of the evidence presented."). Because the Petitioner failed to show good cause for failing to timely file notice for the psychiatric evidence and has not demonstrated how admission of the evidence would be in the interest of justice, I find that the trial court did not abuse its discretion. Rios's request for habeas relief on this ground is therefore denied.

*2. Ineffective Assistance of Counsel*

Rios claims that his trial attorney provided constitutionally deficient representation due to counsel's failure (1) to timely file a notice of intent to present psychological evidence and (2) to argue that Rios lacked criminal responsibility by reason of mental disease or defect. To prevail on this claim, Rios must show that his counsel's performance at trial "fell below an objective standard of reasonableness" and that the performance caused Rios "substantial prejudice." Strickland v. Washington, 466 U.S. 668, 687-88, 691, 694 (1984). With respect to the reasonableness prong of the Strickland test, "the performance inquiry must be whether counsel's

10

assistance was reasonable considering all the circumstances." Id. at 688. In evaluating counsel's performance, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690. The prejudice prong requires a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable" and a reasonable probability that "but for" the claimed errors of counsel, the trial result would have been different." Id. at 694. In other words, counsel's errors must undermine the court's confidence in the trial's outcome. Id. at 691.

Rios's petition is based on his attorney's strategic choice not to pursue a defense of insanity after it was determined that the psychiatrist who examined Petitioner did not offer an opinion that would support the defense. (Tr. at 46.) There is no suggestion that another psychiatrist would have offered a more helpful opinion. Furthermore, Petitioner's appellate counsel chose not to raise this issue on appeal after reviewing the psychiatrist's report and determining that trial counsel made "a sound strategic decision." (Affirmation of Fabricant at 3.) Petitioner has offered no evidence supporting a viable insanity defense and thus provides no basis upon which this Court can find that he suffered prejudice due to counsel's failure to give notice of intent to pursue an insanity defense. Considering the "totality of the evidence before the judge and jury," Strickland at 695, the question of whether there was a reasonable probability that Rios would have been found incompetent at the time of the offense must be answered in the negative. Rios's request for habeas relief on this ground is therefore denied.

*3. Admission of Evidence Regarding "Prior Bad Acts"*

Petitioner claims that testimony by Velez regarding events that occurred several days prior to May 15, 2001 unduly prejudiced the jury and were admitted in violation of his constitutional right to a fair and impartial trial under the Due Process Clause of the Fourteenth Amendment. The testimony, which the prosecutor used to establish Petitioner's intent on May 15, 2001, was that Petitioner waved a machete in a threatening manner in his and Velez's apartment. Petitioner claims this testimony should not have been admitted because he was in fact threatening to kill himself, not Velez, with the machete. Petitioner believes that without this evidence, the State could not have established beyond a reasonable doubt the requisite intent for attempted murder.

Putting aside Petitioner's failure to exhaust this claim in state court (the only other mention of the admission of this testimony came in the error *coram nobis* petition) and the tenuous link between the admission of this evidence and Petitioner's constitutional rights (it is well settled that state-court evidentiary rulings generally do not implicate the federal Constitution, Ohio v. Roberts, 448 U.S. 56, 64-66 (1979)), Rios's claim fails on the merits. "In order to prevail on a claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial, United States v. Agurs, 427 U.S. 97, 108 (1976), a concept the courts have described as 'elusive,' Taylor v. Curry, 708 F.2d 886, 891 (2d Cir.1983)." Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985).

The Supreme Court has never held that the admission of prior bad acts, even when offered to prove a defendant's propensity to commit crimes, violates the Due Process Clause.

See Estelle v. McGuire, 502 U.S. 62, 72 (1991) ("The only question for us is whether the [evidence] by itself so infected the entire trial that the resulting conviction violates due process."); Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Cupp v. Naughten, 414 U.S. 141, 147 (1973); Mosiurchak v. Senkowski, 839 F.Supp. 1035 (S.D.N.Y. 1993) (no federal constitutional violation was established by the admission of evidence of uncharged crimes).

Furthermore, the record suggests that the trial judge was correct to admit the evidence. Before the commencement of the trial, the prosecutor made an application, pursuant to People v. Molineux, 61 N.E. 286 (N.Y. 1901), seeking to introduce this evidence as part of the people's case. The trial court denied this application but ruled that the evidence would be admissible on re-direct if Petitioner opened the door during cross-examination. (Tr. at 64.) As appellate counsel states in his Affirmation in response to the *coram nobis* petition, the admission of the testimony does not constitute a viable claim because the evidence was admitted only after the defense, which had been warned by the court, deliberately opened the door to the evidence. (Affirmation of Fabricant at 4.) "When a party 'opens the door' during cross-examination to excluded evidence, the opponent may seek to admit the excluded evidence in order to explain, clarify and fully elicit the question that has been only partially exposed on cross-examination." People v. Mateo, 811 N.E.2d 1053, 1079 (N.Y. 2004). Furthermore, the Court of Appeals also notes that "the evidentiary rule concerning 'door-opening' is at least as venerable as the rule excluding prior bad acts." Id. at 1079 n.26 (citation omitted). Because the trial court followed the evidentiary law as set out by New York's highest court, and because "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state

evidentiary rules," Marshall v. Lonberger, 459 U.S. 422, 438 (1983), this court finds no reason to question the judgment of the trial court's admission of testimony concerning prior bad acts after defense counsel "opened the door" to such evidence in spite of the judge's repeated warnings. Rios's request for habeas relief on this ground is therefore denied.[3]

*4. Defendant's Right to be Present at All Stages of Trial*

A defendant has a constitutional "right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745 (1987). The court reads ground four of Rios's habeas petition as claiming a violation of this right. Once again, putting aside the lack of exhaustion (Rios had filed this claim only in his error *coram nobis* petition) and the tenuous constitutional nature of this claim (the existence of a "clearly established" constitutional right to be present at sidebar conferences during *voir dire* is yet to be determined by the Second Circuit, Sanchez v. Duncan, 282 F.3d 78 (2d Cir. 2002)), Petitioner fails on the merits because presence is not guaranteed "when presence would be useless, or the benefit but a shadow." Stincer at 745.

After Rios discussed his rights with defense counsel, he signed in open court a waiver of his right to be present at sidebar conferences during *voir dire*, assuring the court that he

---

[3] The type of error alleged in Rios's habeas petition, if accurate, would be best categorized as a "trial error," which is an error that "occur[s] during the presentation of the case to the jury" and is amenable to harmless-error analysis because it "may . . . be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial]." Arizona v. Fulminante, 499 U.S. 279, 307-308 (1991). Since Chapman v. California, 386 U.S. 18 (1967), the Supreme Court has applied the harmless-beyond-a-reasonable-doubt standard in reviewing constitutional claims based on alleged trial error. Had a constitutional error occurred, this court would need to determine the degree of harm caused and whether such an error can be proven harmless beyond a reasonable doubt. However, because I find that no error has occurred, it is unnecessary to linger on this point.

understood the nature of the right he was waiving. (Tr. at 2-8.) This procedure was in accord with Cohen v. Senkowski, 290 F.3d 485 (2d Cir. 2001), in which the Second Circuit held that waivers to presence at sidebar conferences are constitutional when the defendant is fully apprised of the nature of the proceeding, makes no objection to the procedure, and has counsel present during the proceeding.

Rios has failed to "sufficiently demonstrate that his absence from the sidebars frustrated the fairness of the proceedings or resulted in the selection of a biased juror." Sanchez v. Duncan, at 83. Two Second Circuit decisions that support this conclusion are the aforementioned Sanchez case and United States v. Feliciano, 223 F.3d 102 (2d Cir. 2000), which the Sanchez court cites as precedent. After finding no structural error, those courts held there to be no constitutional violation when "(1) defendants were present in the courtroom for the entire jury selection process; (2) most of the questions were answered by the jurors in open court; (3) defendants' counsel participated in the bench conferences and defendants had the opportunity to consult with their counsel at any time during the limited bench questioning; and (4) only two potential jurors who came to the bench for a sidebar conference were selected to serve on the jury." Feliciano at 112; see also Sanchez at 82. Therefore, I find that Petitioner had properly waived his rights and has failed to show a constitutional violation because (1) he was present in the courtroom for the entire jury selection process, (2) most of the questions were answered by jurors in open court, (3) defense counsel participated in the bench conferences and Rios had the opportunity to consult with counsel at any time during the limited bench questioning, and (4) few of the potential jurors questioned in sidebar were selected to serve on the jury.

The decisions of the Second Circuit are in line with Supreme Court precedent regarding a

criminal defendant's right to be present for trial proceedings, limited "to the extent that a fair and just hearing would be thwarted by his absence and to that extent only." Snyder v. Massachusetts, 291 U.S. 97, 108 (1934). This is another way of saying that the defendant must be present "wherever his presence has a relation reasonably substantial, to the fullness of his opportunity to defend against the charges." Id. at 105-106. For the reasons stated, I do not believe Rios's ability to defend himself was limited due to the waiver of his right to be present at sidebar conferences, and thus Rios's request for habeas relief on this ground is denied.[4]

### III. CONCLUSION

For the reasons discussed above, the Petitioner's claims do not warrant habeas relief under 28 U.S.C. § 2254. The Petitioner's request for a writ of habeas corpus is therefore DENIED.

SO ORDERED.

Date: June 25, 2007
Brooklyn, New York

/signed/
NICHOLAS G. GARAUFIS
United States District Judge

---

[4] As Respondent's brief correctly notes (p. 35), Petitioner's suggestion that the more expansive right to be present identified in N.Y. C.P.L. § 260.20 and People v. Antommarchi, 604 N.E.2d 95 (N.Y. 1992), should be applied to his current application is wrong. Those authorities establish and explain a New York statutory right that does not implicate the rights of the defendant under the United States Constitution, and thus have no applicability in a federal *habeas* proceeding.